Plaintiffs instituted suit against defendant to recover damages for personal injuries sustained by Jeanette Dilione on December 1, 1945 as a result of colliding with a glass door in the entrance to the defendant's store and for consequential damages sustained by Rocca Dilione, her husband, flowing from the injuries to his wife. The essence of the complaint was negligence upon the part of defendant in construction and maintenance of the glass doors and faulty lighting.
At the conclusion of the defendant's case, the court directed a verdict in favor of the defendant upon the ground of contributory negligence and plaintiffs appeal from the judgment entered thereon.
Parenthetically we note that the appendix does not contain the judgment. Rule 1:3-1 provides: "The appellant shall print as a part of his appendix the judgment * * * appealed from * * *." Because this appeal has been fully argued and is ripe for decision, the court has checked and ascertained that the record on appeal includes a copy of the *Page 87 
judgment in accordance with Rule 1:2-21. We accept the appeal rather than dismiss it as we might well do under the rules.
When the motion for direction of a verdict for defendant was granted, the evidence disclosed that there were four glass doors at the entrance to the store from the street, then a foyer and four more glass doors which appear from a photographic exhibit to be duplicates of the outer set. The space occupied by the doors has a wooden frame above the top of the glass doors and there is a metal base affixed to the bottom of each door. From an examination of the photograph of the entrance it is evident that of the four doors, the ones at the extreme right and left are hinged at the door jamb and that the two inner doors are hinged in the center of the entrance. It is also clear from the photograph that the distance between the handles on the two doors nearest the center are separated by a distance approximately equal to the width of two doors. This is due to the fact that the handle on each door is, of necessity, placed as far from the side on which it is hinged as possible. The handles were of glass, fastened to the doors by opaque fixtures bearing the inscription "Pull." From the meager record brought up in the appendices it is difficult to reconstruct the accident but it appears that Mrs. Dilione collided with the inner doors at a point somewhere between the two glass handles nearest the center of the entrance. We quote her testimony: "Q. * * * So as you entered that right hand door, you then walked to the center of the store or toward your right, is that correct? A. That's right. Q. Now, as you walked toward the center of the store, was there anything to obstruct your view from that point? A. I didn't see anything. Q. And as you walked toward the center of the store, what was the next thing that happened? A. The first thing I knew, I was into the glass door." She further testified that there was nothing to obstruct her vision, that the store proper and the foyer were illuminated and that she could see "perfectly clear." A building contractor testified that the glass doors were not standard construction because there was nothing to indicate that there was a door. An electrical contractor testified that the generally accepted practice was *Page 88 
to provide different intensities of light between the two sides of glass to increase their visibility and that at the defendant's store the intensity in the foyer and the store was "about equal."
We think that a jury question was raised as to whether or not the defendant had exercised reasonable care to warn incoming customers of the existence of a second set of transparent doors between the outer set of doors and the interior of the store, the presence of which inner set was indicated only by four glass handles, the two central handles being separated by the width of two of the doors. We are also of the opinion that under the evidence there was a jury question as to whether or not the lighting conditions were proper.
Since the case will have to be retried, we point out that it was error to allow the witness Vogel to testify as to the number of persons who passed through the doors without the witness having knowledge of any of them being injured. Temperance Hallv. Giles, 33 N.J.L. 260 (Sup.Ct. 1869).
The judgment is reversed to the end that a new trial may be had.